UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**WESLEY JOHNSON, an individual,**

        **Plaintiff,**

**v.**

**LASCO BATHWARE, INC., a**
**Delaware Corporation**

        **Defendant.**

_____/

**Case No. 4:01-CV-180**

**Hon. Hugh W. Brenneman, Jr.**

## OPINION

This is a civil action filed by plaintiff Wesley Johnson against his former employer, defendant Lasco Bathware, Inc. Johnson asserts two causes of action: (1) race discrimination, race harassment, and retaliation in violation of 42 U.S.C. § 1981 and the Elliot-Larsen Civil Rights Act, M.C.L. 37.2101 *et seq.*, and (2) intentional infliction of emotional distress. Johnson also alleges that he was constructively terminated from his position at Lasco as a result of race-based discrimination, harassment, and retaliation. Both parties have engaged in substantial discovery, and this matter is now before the court on defendant's motion for summary judgment pursuant to Rule 56(c), FED. R. CIV. P. (docket no. 49).

### I.        Summary Judgment Standard

Summary judgment is appropriate when the record reveals that there are no issues as to any material fact in dispute and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Sable v. General Motors Corp.*, 90 F.3d 171, 175 (6th Cir. 1996). The

standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *See Adcox v. Teledyne, Inc.*, 21 F.3d 1381, 1385 (6th Cir.) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). *See also Crabbs v. Copperweld Tubing Products Co.*, 114 F.3d 85, 88 (6th Cir. 1997).

When considering a motion for summary judgment, the court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct 1348, 89 L.Ed.2d 538 (1986); *Wathen v. General Elec. Co.*, 115 F.3d 400, 403 (6th Cir. 1997). The party moving for summary judgment bears the initial burden of showing the district court that there is an absence of evidence to support the nonmoving party's case, but need not support its motion with affidavits or other materials "negating" the opponent's claim. *Moore v. Philip Morris Companies, Inc.*, 8 F.3d 335, 339 (6th Cir. 1993). Once defendant shows that "there is an absence of evidence to support plaintiff's case," plaintiff has the burden of coming forward with evidence raising a triable issue of fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct 2548, 91 L.Ed.2d 265 (1986). To sustain this burden, the plaintiff may not rest on the mere allegations of his pleadings. FED. R. CIV. P. 56(e); *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995). A party opposing a motion for summary judgment has the burden to come forth with the requisite proof to support his legal claim, particularly where he has had an opportunity to conduct discovery. *See Noble v. Chrysler Motors Corp.*, 32 F.3d 997, 999 (6th Cir. 1994); *Street v. J. C. Bradford & Co.*, 886 F.2d 1472, 1478-81 (6th Cir. 1989); *Booker v. Brown & Williamson Tobacco Co.*, 879 F.2d 1304, 1310 (6th Cir. 1989). In so doing, plaintiff must set forth *specific facts* showing that there is a genuine

issue for trial. FED. R. CIV. P. 56(e);  *see Kensu v. Haigh*, 87 F.3d 172, 175 (1996); *Brennan v. Township of Northville*, 78 F.3d 1152, 1156 (6th Cir. 1996). An issue of fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmovant. *Anderson*, 477 U.S. at 248.  Production of a "mere scintilla of evidence" in support of an essential element will not forestall summary judgment.  *Id.* at 252. The respondent must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586.

The substantive law identifies which facts are "material." Facts are "material" only if establishment thereof might affect the outcome of the lawsuit under governing substantive law. *Anderson*, 477 U.S. at 248. A complete failure of proof concerning an essential element necessarily renders all other facts immaterial. *Celotex*, 477 U.S. at 322-23.

## II.    Plaintiff's Allegations

Plaintiff has made the following allegations. He is African American. He worked for defendant corporation in its Three Rivers plant facility as a second-shift "foam gun operator and grab bar installer" during the relevant time period. (Pl.'s Compl. at ¶¶ 1, 3, 12, 14; Johnson Dep. at 31.) In this capacity, plaintiff received completed bathtubs and showers from the "A-grade" employee, stationed fifteen feet away, and installed grab bars on the units with a foam gun.  (Johnson Dep. at 28-29, 32.) The "A-grade" employee's job consisted of sanding and buffing minor imperfections on the units. (*Id.* at 32, 39.) During the relevant time period, Randi Creager, who is white, worked the "A-grade" position during the second-shift.  ( Pl.'s Compl. at ¶ 23; Johnson Dep. at 36.)

On August 9, 2000, Creager left the production line for an unscheduled cigarette break. Upon her return, she worked quickly and sloppily in an attempt to make up for the time lost during her break. This overloaded plaintiff's station, and as a result plaintiff had to return many

3

improperly sanded or buffed units to Creager for proper treatment. (Pl.'s Compl. at ¶¶ 24-29; Johnson Dep. at 49-54.) Irritated by the backlog, plaintiff asked Creager to stop bringing tubs to him. Creager responded by screaming at plaintiff and calling him a "fucking lazy nigger." (Pl.'s Compl. at ¶¶ 30-31; Johnson Dep. at 54.) Immediately thereafter, Creager went to the women's locker room, where she told at least two co-workers (at least one of them African American) that she had called plaintiff a "fucking lazy nigger." She went on to explain that she was not racist, and that she used the term merely to denote laziness, not race. (Pl.'s Compl. at ¶¶ 33-34; Johnson Dep. at 58-59; Creager Dep. at 21-27.)

At the end of that shift, plaintiff met with shift supervisors Kunta Taylor and Dave Timm, as well as plant superintendent Dan Swartzentruber, and reported the incident. Plaintiff also reported a previous incident where another white employee had called him a "fucking low life bitch." He also told them about both co-workers' poor job performance. (Pl.'s Compl. at ¶¶ 38-42; Johnson Dep. at 57-58, 60-61.) The next day, Swartzentruber and Timm interviewed Creager, who admitted "that she had said something she shouldn't have." (Swartzentruber Dep. at 14.) Swartzentruber gave Creager a verbal warning and told her that she could be terminated if it happened again. (*Id.* at 14-17.) Taylor reported the action that was taken to plaintiff, indicating that, in his opinion, a more severe punishment was appropriate. (Johnson Dep. at 62, Pl.'s Compl. at 43.) This opinion was apparently shared by other employees, including Creager herself.  (Johnson Dep. at 65, Creager Dep. at 37.)

Plaintiff and Creager continued to work in the same capacities as they had before the incident. (Johnson Dep. at 63.) At times, Creager attempted to initiate conversation, but was rebuffed by plaintiff, who refused to talk to her. (Johnson Dep. at 71.) No one at the facility apologized to

4

plaintiff for the incident. (Pl.'s Compl. at 45.) At some time after the August 9th incident, plaintiff was assigned additional job duties. (Johnson Dep. at 71-72.) On August 30, 2000, plaintiff met with Sandra Middling, human resources director at the facility. He complained to her about the action that had been taken against Creager, which he considered mild and inadequate. He believed more extreme measures, such as termination or suspension, should have been taken. Plaintiff further indicated to Middling that he was still upset and experiencing stress from the incident. (Middling memo, attached to Pl.'s Compl. as Ex. 5; Middling Dep. at 63-67.) The next day, Middling spoke with Swartzentruber about the meeting, and no further action was taken. (Middling memo, attached to Pl.'s Compl. as Ex. 6; Middling Dep. at 67-72.)

In September, plaintiff bid on two or three[1] transfer positions within the plant. He was the only employee to bid on one, possibly two, of the positions. He was not accepted for the positions, and the positions were not filled at all. (Johnson Dep. at 81-84.)

On October 26, 2000, plaintiff resigned. In his written resignation notice, he cited as reasons for his resignation the added duties imposed on him without additional pay, favoritism, racism, and the August 9th incident and the stress it had caused him. (Johnson resignation notice, attached to Pl.'s Compl. as Ex. 10.)

### III.    Plaintiff's Claims under 42 U.S.C. § 1981

In the first count of his complaint, plaintiff asserts claims of race discrimination, racial harassment, and retaliation under 42 U.S.C. § 1981 and the Elliot-Larsen Civil Rights Act, M.C.L. 37.2101 *et seq*. Plaintiff's complaint and brief in opposition to this motion suggest additional related claims of hostile work environment and constructive discharge under the same statutes.

---

[1] The record is unclear on this point. *See* Johnson Dep. at 82-84.

Though this action was not brought under Title VII (42 U.S.C. § 2000 *et seq.*), "[t]he analysis under Fed. R. Civ. P. 50 and 56 of whether a case should be submitted to the jury is the same under [42 U.S.C.] Sections 1981, 1983 and the Elliott-Larsen Act as it is under Title VII." *Kresnak v. City of Muskegon Heights*, 956 F.Supp 1327 (W.D.Mich. 1997), citing, *inter alia*, *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir. 1992) and *Rabidue v. Osceola Refining Co.*, 805 F.2d 611, 617 (6th Cir. 1986).

### A.      Racial Harassment/Racially Hostile Work Environment

Although plaintiff has included a claim of racial harassment in his pleadings, he has failed to allege any instance of racial harassment by defendant. Plaintiff's claim in this regard is more properly characterized as a claim of a racially hostile work environment, and it was briefed as such by both parties.

In order to establish a prima facie case of a racially hostile work environment, plaintiff must show (1) that he was a member of a protected class; (2) that he was subjected to unwelcome racial harassment; (3) that the harassment was based on race; (4) that the harassment had the effect of unreasonably interfering with the plaintiff's work performance by creating an intimidating, hostile, or offensive work environment; and (5) the existence of employer liability. *Newman v. Federal Express Corp.*, 266 F.3d 401, 405 (6th Cir. 2001).

In making the hostile work environment determination, the court must consider the totality of the circumstances. *Id. See also Faragher v. City of Boca Raton*, 524 U.S. 775, 787-88, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998).

> Specifically, we consider "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it

> unreasonably interferes with an employee's work performance."
> *Harris* [*v. Forklift Systems, Inc.*], 510 U.S. [17] at 23, 114 S.Ct. 367.
> The Supreme Court has consistently held that "simple teasing,
> offhand comments, and isolated incidents (unless extremely serious)
> will not amount to discriminatory changes in the terms and conditions
> of employment." *Faragher*, 524 U.S. at 788, 118 S.Ct. 2275 (internal
> quotations omitted). Finally, the work environment must be both
> objectively and subjectively offensive. *See Harris*, 510 U.S. at 21-22,
> 114 S.Ct. 367.

*Newman*, 266 F.3d at 405.

Plaintiff alleges only two isolated incidents of harassment to support his claim, one of which was not racial in nature. As to the first incident which occurred, plaintiff has presented no evidence that the epithet "fucking low life bitch" was motivated by racial animus or in any way constituted racial harassment. That incident is irrelevant in this action.

The remaining incident (involving Creager), standing by itself, is legally insufficient to support a hostile work environment claim. The conduct in question must be so severe or pervasive as to create an environment that a reasonable person would find hostile or abusive. *Harris*, 510 U.S. at 21-22, 114 S.Ct. at 370-71. The conduct in the present case does not rise to that level as it has been interpreted by this Circuit. *Compare Burnett v. Tyco Corp.*, 203 F.3d 980, 985 (6th Cir.2000) (holding that "under the totality of the circumstances, a single battery coupled with two merely offensive remarks over a six-month period does not create an issue of material fact as to whether the conduct alleged was sufficiently severe to create a hostile work environment") *with Williams v. General Motors Corp.*, 187 F.3d 553 (6th Cir. 1999) (holding that the severe or pervasive standard was met where there were fifteen incidents within one year including derogatory and profane remarks directed at the plaintiff, sexually explicit comments directed at the plaintiff,

offensive comments directed at women in general, denial of plaintiff's overtime, and the exclusion of plaintiff from certain workplace areas).

However, even if the court were to conclude, for the purpose of this motion, that plaintiff was subjected to severe or pervasive harassment that constituted an actionably hostile work environment, plaintiff has failed to allege facts sufficient to establish defendant's liability. An employer can only be held vicariously liable for a hostile work environment where the hostile or abusive environment is created by a supervisor or other employee with authority over the plaintiff. The employer can be held directly liable, however, where the hostile or abusive environment is created by the conduct of the plaintiff's co-workers.  For direct liability to be imposed in this way, plaintiff must show (1) that defendant employer knew or should have known of the conduct, and (2) that its response manifested indifference or unreasonableness in light of that conduct. *Jackson v. Quanex Corp.*, 191 F.3d 647, 663 (6th Cir. 1999).  The court must judge the appropriateness of the employer's response by the frequency and severity of the harassing conduct. *Id.* "Generally, a response is adequate if it is reasonably calculated to end the harassment." *Id.  See also Intlekofer v. Turnage*, 973 F.2d 773, 778 (9th Cir.1992).

Here, defendant's agents acted promptly and effectively upon receiving notice of the harassment. They interviewed and reprimanded Creager the next day. According to his own deposition, plaintiff was never harassed again, either by Creager or anyone else at defendant's plant; clearly defendant's response was effective. Nonetheless, plaintiff argues that defendant's response was inadequate to remedy the situation because after the incident neither he nor Creager were transferred to different stations or shifts, and they continued to work fifteen feet from each other. In his brief, plaintiff cites, in no particular order, no less than ten opinions as authority for the

8

proposition that appropriate remedial action "generally requires that the offender and victim be separated in some way so that the work environment would not remain hostile and offensive." Pl.'s Br. in Opp. to Def.'s Mot. for Summ. J. at 7. None of the cited opinions are controlling on this court and none support plaintiff's conclusion, even though they all involve job transfers in the context of hostile work environment claims. *See id.* at 7-8.[2]

      As previously discussed, employers are shielded from liability under a hostile work environment theory when they take steps "reasonably calculated to end the harassment." *Jackson*, 191 F.3d at 663. The extent of remedial measures necessary to avoid liability varies with the particular circumstances of each case; most important in this analysis is the severity and frequency

---

[2]In four of the cited cases, the employer-defendant separated the plaintiff and alleged victim, and the courts held that the employers had satisfied their obligation to take steps reasonably likely to prevent future harassment. *See Hubbard v. United Parcel Service*, 200 F.3d 556 (8th Cir. 2000); *Savino v. C. P. Hall Co.*, 199 F.3d 925 (7th Cir. 1999); *Saxton v. American Tel. & Tel. Co.*, 10 F.3d 526 (7th Cir. 1993); *Guess v. Bethlehem Steel*, 913 F.2d 463 (7th Cir. 1990). However, none of these opinions held such action *necessary*; they merely held such action sufficient under the circumstances of each particular case. The law requires "only that the employer take steps reasonably likely to stop the harassment." *Saxton*, 10 F.3d at 536. This is an intentionally flexible standard; more severe remedial action is required of employers in more severe situations. Two of plaintiff's cases involved employee transfers only tangentially. *See Carmon v. Lutrizol Corp.*, 17 F.3d 791 (5th Cir. 1994); *Van Jelgerhuis v. Mercury Financial Co.*, 940 F.Supp 1344 (S.D.Ind. 1996).

In two other cases, the respective plaintiffs alleged that the transfers were part of the wrongdoing at issue. *Greenslade v. Chicago Sun-Times, Inc.*, 112 F.3d 853 (7th Cir. 1997) (plaintiff alleged transfer itself was illegally discriminatory conduct); *Nash v. Electrospace System, Inc.*, 9 F.3d 401, (5th Cir. 1993) (plaintiff alleged transfer was retaliation for reporting sexual harassment). In *Buchanan v. Sherrill*, 51 F.3d 227 (10th Cir. 1995), the court discussed plaintiff's constructive discharge claim, holding that the plaintiff could not argue that she had no choice but to quit when indeed she had the option of a job transfer. Finally, in *Pereira v. Schlage Electronics*, 902 F.Supp 1095 (N.D.Cal. 1995), far from holding that a separation of the employees was required, the court held that there was a question of fact as to whether defendant employer's remedial actions (which did not include separating the employees) were sufficient to excuse the employer from hostile work environment liability.

of the harassing conduct. *See Id.* In the present case, the reasonableness of defendant's response to this isolated incident is evidenced by its effectiveness. *See Pereira*, 902 F.Supp at 1103 ("reasonableness of a remedy depends on its effectiveness in ending the harassment.").

### B.    Retaliation

Plaintiff further alleges that he was the victim of retaliation from defendant in response to his racial harassment complaints. To establish a prima facie case of retaliation, plaintiff must show: (1) that he engaged in protected activity; (2) that this exercise of protected rights was known to defendant; (3) that defendant thereafter took adverse employment action against plaintiff; and (4) that there was a causal connection between the protected activity and the adverse employment action. *Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 792 (6th Cir. 2000).

The adverse employment action alleged by plaintiff in this case is the denial of his job transfer requests. Apparently the positions he applied for were never filled, and did not remain open; the positions, in effect, were eliminated. (Johnson Dep. at 83.)   First, the actions taken by defendant, as alleged by plaintiff, simply do not constitute an <u>adverse</u> employment action.  Plaintiff suffered no negative consequences because he was not given the transfer he requested.  *See Birone v. Indian River School,* 1998 WL 199791, at *4 (6th Cir. 1998) ("To constitute an adverse employment action, an act must result in a loss in pay or benefits, a detrimental change in responsibilities, a negative change in the terms and conditions of employment, or some such actual and unfavorable change in job status.").

Moreover, even if defendant's actions were to constitute adverse employment action, plaintiff has failed to allege, much less produce any evidence of, a causal nexus between his complaint about Creager and defendant's denial of his job bids. To establish the causal connection

required for a prima facie case of retaliation, an employee must produce sufficient evidence from which an inference could be drawn that the adverse action would not have been taken place had the employee not engaged in protected speech.  *See Nguyen v. City of Cleveland*, 229 F.3d 559 at 565 (6th Cir. 2000).

Here, the hard evidence points in the other direction.  In the pool of applicants for the "A-grade" third shift position (the only bid of which there is any record), plaintiff was the <u>least</u> qualified of the three applicants: he had less seniority and had a worse disciplinary record than the other two applicants. (Bid sheet, attached to Pl.'s Br. in Opp. to Def.'s Mot. for Summ. J. as Ex. 9; Swartzentruber Dep. at 47-49.)  This provided a justifiable reason for not transferring plaintiff, since there were others more qualified.

Further, "the nonmoving party may not rely on the mere fact that an adverse employment action followed speech that the employer would have liked to prevent. Rather, the employee must link the speech in question to the defendant's decision to dismiss her." *Bailey v. Floyd County Bd. of Educ. By and Through Towler*, 106 F.3d 135, 145 (6th Cir. 1997) (citation omitted).  Proximity in time standing by itself is insufficient to support an inference of retaliation, particularly in light of the circumstances surrounding the denial of the job bids.

Plaintiff has also apparently now raised as an issue that the assignment of additional work duties to him without a pay increase constituted an adverse employment action.  Although this argument is not found in plaintiff's complaint or his brief in opposition to this motion, since the argument was discussed at the hearing on this motion, the court will address it.  At some point after the August 9 incident, plaintiff was assigned extra job duties that included drilling holes and attaching legs to tubs.  (Johnson Dep. at 71-72.)  Plaintiff spent about two minutes per tub to

11

complete these duties.  *Id.*  Plaintiff argues that the extra duties were imposed upon him as a direct response to his complaints to management.  Defendant argues that the extra duties, which it characterizes as insubstantial,  were not imposed as retaliation. The addition of the extra job duties did not constitute retaliation against this individual because foam gun operators on all three shifts were assigned the same extra duties. (Middling Dep. at 41.)

### C.    Race Discrimination

Plaintiff also alleges that defendant's denial of his job bid applications constitutes race discrimination. To establish a claim of race discrimination, plaintiff must show "(i) that he belongs to a racial minority; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications." *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973).  Though the *McDonnell Douglas* formula was introduced in a Title VII context, it is also the proper evidentiary framework for analyzing race discrimination claims brought under 42 U.S.C. § 1981.  *See Mitchell v. Toledo Hospital*, 964 F.2d 577, 582 (6th Cir. 1992) (citing *Patterson v. McLean Credit Union*, 491 U.S. 164, 186, 109 S.Ct. 2363, 2378, 105 L.Ed.2d 132 (1989)).

Plaintiff has not shown that he was qualified for the jobs for which he bid, nor has he shown that "the position remained open and the employer continued to seek applicants from persons of complainant's qualifications." *McDonnell Douglas*, 411 U.S. at 802. To the contrary, the record evidence suggests that plaintiff was not qualified for the position due to his disciplinary status. (Johnson Dep. at 82; Middling Dep. at 48; Swartzentruber Dep. at 47-49.) He had two written

attendance warnings; one of his competitors for the bid had one verbal warning for attendance, and one had been given no warnings. (Ex. 9, Pl.'s Br. in Opp. to Def.'s Mot. for Summ. J.) The evidence further indicates that the position was never filled, and was effectively closed as defendant discontinued soliciting employees to fill the positions. (Johnson Dep. at 83.)

### D. Constructive Discharge

Plaintiff's final claim of constructive discharge must also be dismissed as being without merit. Plaintiff has failed to plead and provide evidentiary support for the necessary elements of this claim. The Sixth Circuit has indicated the burden that the claimant bears when alleging constructive discharge:

> To demonstrate a constructive discharge, Plaintiff must adduce evidence to show that 1) 'the employer ... deliberately create[d] intolerable working conditions, as perceived by a reasonable person,' and 2) the employer did so 'with the intention of forcing the employee to quit....' 'To determine if there is a constructive discharge, both the employer's intent and the employee's objective feelings must be examined.'

*Logan v. Denny's Inc.*, 259 F.3d 558, 568-69 (6th Cir. 2001), citing *Moore v. KUKA Welding Sys.*, 171 F.3d 1073, 1080 (6th Cir. 1999). In addition, constitutional discharge involves severe and sustained harassment. *See Tutmen v WBBM-TV, Inc./CBS, Inc.,* 209 F.3d 1044, 1050 (7th Cir. 2000)(collecting cases).

As noted previously, plaintiff has failed to demonstrate that defendant deliberately created intolerable working conditions. This incident arose from an isolated outburst of an angry co-worker, who was promptly chastised by management which warned her that a further outburst would result in her being fired. The absence of any evidence that defendant acted deliberately in creating this situation makes it unnecessary for the court to address the issue of defendant's intent.

13

IV.    **Plaintiff's Pendent State Claims: The Elliot-Larsen Civil Rights Act and Intentional Infliction of Emotional Distress**

If plaintiff's federal claims were to survive summary judgment, the court would consider plaintiff's state claims by exercising its supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a).  However, 28 U.S.C. § 1367(c)(3) gives the court discretion to dismiss the plaintiff's pendent state law claims if the court "has dismissed all claims over which it has original jurisdiction."  *Id.  See also Hankins v. The Gap*, 84 F.3d 797 (6th Cir. 1996).  Thus, once a court has dismissed a plaintiff's federal claims, it must determine whether or not to exercise its supplemental jurisdiction under § 1367.  *See Campanella v. Commerce Exchange Bank*, 137 F.3d 885, 892-893 (6th Cir. 1998).  As a general rule, "[w]hen all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims."  *Musson Theatrical, Inc. v. Federal Express Corp.*, 89 F.3d 1244, 1254-1255 (6th Cir. 1996).  Here, all federal claims have been rejected.  Accordingly, the court exercises its discretion and dismisses plaintiff's state law claims.

V.    **Conclusion**

For the reasons set forth above, defendant's motion for summary judgment will be GRANTED and plaintiff's complaint will be dismissed with prejudice.


Dated:  September 16, 2003            /s/ Hugh W. Brenneman, Jr.

                                Hugh W. Brenneman, Jr.
                                United States Magistrate Judge